Davis, J.
The contention is made here that section 2926o, Revised Statutes, violates section 1, article 5, of the constitution and also section 26, article 2, of the constitution.
It has not been made to appear to us, by argument or otherwise, that the strict enforcement of this stat *163 ute would necessarily deprive any elector of liis vote, or that any elector ever has been deprived of his vote thereby. In one of the cities of the class defined in this section, this law has been in force for eighteen years and no complaint has yet been made that it has operated to the exclusion of a single lawful vote. When we consider its operation in connection with the sections of the statute making the election day from five-thirty o’clock A. M. to nine o’clock A. M., a legal part holiday, for election purposes only, and requiring the deputy state supervisors to “provide a sufficient number of voting shelves” (97 O. L., 238, sec. 6, and 234, sec. 19), it does not appear probable that any voter would be deprived of his vote by reason of the shortness of the time allowed. The first ground of the contention is therefore not well taken.
The section is general in its nature. Its subject-matter is the conduct of elections, as is the subject-matter of the whole statute of which it is a part, a matter which directly concerns every elector in the commonwealth. It operates throughout the state, because its operation is not limited to any locality and is limited only by the boundaries of the state. The provisions of this section, however, do apply only to cities having a population of three hundred thousand or more, wherever they may be situated within the state. It happens that there are only two cities in the state which are included in the class defined in the statute; and it also happens that these cities are situated at opposite extremities of the state. Hence it is argued that although the act is in form and subject-matter of a general nature and operates throughout the state, yet that it does not uniformly operate throughout the state and is in *164 intention and effect a special enactment; conferring a special privilege upon the two cities, in regard to a matter which concerns alike all the electors of the state; and it is maintained that it is based on an unconstitutional classification in order to give the section the form and appearance of a law of uniform operation.
If the classification which is made in this statute can be sustained, then the statute strictly complies with section 26 of article 2 of the constitution. If such classification is not allowable under the constitution, then this section of the statute is unconstitutional, for the reason that it is special legislation upon a subject-matter of a general nature and does not operate uniformly throughout the state.
In Platt v. Craig et al., 66 Ohio St., 75, 79, it was said in the opinion that “laws of a general nature are required by the constitution (art. 2, sec. 26) to have a uniform operation throughout the state. Not only must such laws operate throughout the state, but they must, operate unif ormly, that is, there must be no exemption as to individuals of the same class. A general law must, therefore, in its operation be coextensive with the state and coextensive with every class brought within the purview of the statute; but the section does not imply that a law of a general nature must necessarily affect every individual in the state, or every small division of territory within the state.”
In State ex rel. v. Spellmire et al., 67 Ohio St., 77, at page 86, Burket, C. J., says: “With us ‘uniform operation throughout the state’ means universal operation as to territory; it takes in the whole state. And, as to persons ‘and things, it means universal *165 operation as to all persons and things in the same condition or category. When a law is available in every part of the state as to all persons and things in the same condition or category, it is of uniform operation throughout the state.”
It is apparent from these recent utterances of this court, that the court has never meant to be understood as denying the general doctrine, held everywhere and often approved here, that a statute in relation to a class, if its operation is not territorially restricted, is a general law. Classification is often proper and sometimes necessary in legislation, in order to define the objects on which the law is to take effect and in order to definitely apply and effectuate the purposes of the legislation. For example, married women and widows are recognized as two distinct classes for the purposes of legislation peculiar to each class, as are also corporations classed as railroad companies, street railroad companies, electric interurban railroad companies, telegraph companies, telephone companies, express and insurance companies, etc. Many other illustrations may be found in the statutes of our state. In short there could be very little general legislation without classification.
But when the classification is unnecessary, arbitrary, fictitious or otherwise faultily made and is used to evade the constitutional limitations under the form of general legislation, such legislation in relation to a class may be special and unconstitutional. The reported decisions of this court abound with cases of false classification in acts obviously drawn with the purpose of enacting special laws under the guise of general laws. These are chiefly acts relating to municipal corporations.
*166 In State ex rel. Knisely et al. v. Jones et al., 66 Ohio St., 453, it was clearly shown that classification and subclassification of cities and villages for the purposes of the organization thereof and for the purposes of legislation relating to the organization thereof, to the extent that every considerable city stood in a class by itself and all others could be readily identified and might as well have been mentioned by name, was not a classification on the basis of any real or permanent relation among its objects, but was a fictitious classification resulting in specialization and an evasion of constitutional limitations; and that legislation founded thereon was special legislation. But that is not inconsistent with the well established doctrine that within the legitimate purposes of general legislation, not relating to the organization of cities and villages, a bona fide classification on the basis of real and substantial differences in population, and of the conditions growing out therefrom, would be valid. The present case is an illustration of the application of this principle. The general assembly was legislating upon the subject of the conduct of elections throughout the state. That body was admonished in advance by a decision of this court that “The legislature have no power, directly or indirectly, to deny or abridge the constitutional right of citizens to vote, or unnecessarily to impede its exercise; and laws passed professedly to regulate its exercise or prevent its abuse must be reasonable, uniform and impartial.” Monroe et al. v. Collins, 17 Ohio St., 665.
But experience had shown that under the social conditions which prevail in some quarters of very large cities, fraud, intimidation and even violence *167 were more likely to occur in the twilight and darkness than in hroad daylight — “They love darkness because their deeds are evil” — and more likely to occur there than in smaller aggregations of population. The legislature therefore provided that the polls should be closed at four o ’clock, standard time, in the afternoon, “in cities which have now or may hereafter have a population of three hundred thousand or more.” The minimum of population thus fixed is tens of thousands below the population of either of the cities now included within the class, and is not beyond the range of possibility to other cities, if the rate of growth in urban populations in recent years should continue for a quarter or a half of a century. Thus the legislature clearly evinced an intention that the section which is now challenged should not apply to Cincinnati and Cleveland only, but should apply generally throughout the state, and that it should be a permanent regulation regarding the conduct of elections throughout the state.
There may well be differences of opinion as to whether this provision should not apply to cities of less population than the prescribed number; but the law-making power has exercised its judgment on that matter. The limit of population upon which the classification should be based is entirely within the discretion of the general assembly, having regard to all the conditions and circumstances, and so long as it is not unreasonable in its operation or subversive of the rights of electors, we cannot interfere with it.
This section was evidently designed to protect the voter in easting a free, untrammeled ballot and to ■enable him to have it honestly counted. It seems to *168 have been conceived on proper lines and when construed with other enactments in pari materia, it is liberal and reasonable towards the voter.
The case of State ex rel. v. Buckley, 60 Ohio St., 273, cited in behalf of the relators, does not apply to this case. In that case there was an express exemption of territory as to which the statute should not be operative. That is not true of the statute which we are now considering.
Our conclusion is, therefore, that section 2926o, Revised Statutes, is a law of a general nature and that it operates uniformly throughout the state; that when considered in connection with other legislation related to it and on the.same subject, it does not deny or abridge the right of citizens to vote; that it is intended to, and does, facilitate rather than impede the exercise of the right of suffrage; and that it is reasonable, uniform and impartial.
The judgment of the circuit court and the judgment of the court of common pleas are therefore

Reversed and the original petition dismissed.

Chew and Summers, JJ., concur.
Spear, C. J., and Price, J., not sitting.